O P I N I O N
Defendant-appellant Joseph Brady appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of sexual imposition in violation of R.C.2907.06 and one count of contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On December 17, 1999, the Stark County Grand Jury indicted appellant on one count of sexual battery in violation of 2907.03, a felony of the third degree, one count of corruption of a minor in violation of R.C.2907.04, a felony of the fourth degree, one count of sexual imposition in violation of R.C.2907.06, a misdemeanor of the third degree, and one count of contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24, a misdemeanor of the first degree. At his arraignment on December 23, 1999, appellant entered a plea of not guilty to the charges contained in the indictment.
Subsequently, a jury trial commenced in this matter on June 14, 2000. The following evidence was adduced at trial.
Katie Schafer, who was fifteen years old at the time of the trial,[1]
initially met appellant through her older brother, Ryan, age 23, who was friends with appellant. In August of 1999, Katie renewed her friendship with appellant through friends and would often go to appellant's house along with her friends to party. Katie and her friends would go to appellant's home around midnight and would stay as late as 2:00 or 3:00 a.m. without their parents' knowledge. At trial, Katie testified that beer and GHB, a liquid that can be put into a drink, were available at appellant's home. Katie, who admitted to trying GHB, testified that it made her feel "a little bit dizzy, you're real like free, like when your are drunk you're real like — you get real tired. . . . You can pass out." Trial Transcript at 125.
According to Katie's testimony, on the night of August 17, 1999, she was at appellant's house with her friends, Heather and Jason. At trial, Katie testified that appellant, who was twenty-three years old at the time, knew that Katie was only fourteen years old. While at appellant's house, both Katie and Heather "took a cap of GHB." Trial Transcript at 127. Heather then fell asleep. After Katie told appellant that she was not feeling the effects of the GHB, appellant, with Katie's knowledge, put more GHB into her orange juice. Katie testified that after she laid down on the couch, appellant took off her pajama pants and began tickling her leg. When appellant began massaging Katie's groin, Katie, who started to get really tired and could not keep herself awake, was drifting in and out of sleep. At trial, Katie further testified that her shirt also came off, although she was unsure how. At the time, Heather was sleeping on another couch in the same room.
When Katie next woke up, she saw appellant performing oral sex on her. At the time, Katie's underwear had been removed. Katie then passed out again. When she awoke the next time, appellant was having intercourse with her. According to Katie, "I woke up because it hurt. I couldn't — it hurt really bad. I couldn't stay awake though. There was nothing I could do to keep myself awake . . . I was too weak and too tired. ." Trial Transcript at 130-131. After waking up, Katie told appellant to stop having intercourse with her because it was painful. However, appellant told her that it shouldn't hurt because "he wasn't even hard." Trial Transcript at 131. When questioned, Katie testified that she did not believe that appellant had ejaculated. During the incident, Heather, who was sleeping on a couch near the couch Katie and appellant were on, didn't hear anything.
When appellant woke Katie up the next morning at approximately 6:30 a.m. she had no clothes on except for her bra. Katie testified that she ripped her underwear while trying to put them on and that Heather had to help her get her pajama pants back on. Katie and Heather then went to Katie's house, where they slept until 4:00 p.m. At trial, Katie testified that she woke up to hear the telephone ringing. According to Katie, "[i]t was Joe [appellant]. He had just said to me do you remember what happened last night? Do you remember anything. And I said I did. He told me not to say anything, he could get in a lot of trouble." Trial Transcript at 134. When asked why she did not tell anyone what had happened until December of 1999, Katie testified as follows:
 I had seen him [appellant] several times. He had told me not to say anything. I don't know if he called it a threat. He just said don't say anything. You know. And I was in a new school. It was just my first year at Alliance. I didn't know people. I was a virgin. I didn't want people to lose respect. I didn't know what people would think of me. I was scared what people would say.
Trial Transcript at 135-136.
In December of 1999, after a friend of hers took GHB and was taken to the hospital, Katie told her best friend and the friend's mother about her use of GHB and her encounter with appellant. Katie testified that, she later was called into the Alliance High School Dean's Office where she spoke with the Dean of Students and with Detective Greg Anderson, who were investigating the use of GHB by students. At trial, Katie was asked why, during December of 1999 she had not told Detective Anderson that appellant had performed oral sex on her. Katie responded that "everything was thrown at me so fast I forgot to say something about it." Trial Transcript at 151.
Approximately a month and a half before trial, Katie found the underwear that she had been wearing on the night of August 17, 1999, in a drawer and turned the same over to the police. While the underwear was ripped at the right seam and appeared to have not been laundered, an examination of the same by a scientist with the Canton-Stark County Crime Laboratory did not reveal any traces of blood, semen or saliva. When Katie was asked why she had not mentioned the underwear to Detective Anderson, she testified that she "just forgot that I had them. It was like months later. . ." Trial Transcript at 215.
At the trial, Robert Mandi, a pharmacist licensed by the State of Ohio, testified that GHB, which became a Schedule II controlled substance in May of 2000, is a sedative that, in low dosages, causes a state of amnesia and also loss of muscle control. In addition, Dr. Jan Scaglione, a clinical pharmacist who specializes in poison information, testified that GHB, in low doses, causes amnesia, drowsiness, and dizziness and also that GHB enhances REM sleep. According to Dr. Scaglione's testimony, "the onset of GHB is very rapid." Trial Transcript at 325. Dr. Scaglione further testified that an individual who has passed out from GHB could, depending on the amount of GHB taken, be aroused from sleep.
At the conclusion of the trial and the end of deliberations, the jury, on June 16, 2000, found appellant guilty of contributing to the unruliness or delinquency of a child, a misdemeanor of the first degree and guilty of sexual imposition, a misdemeanor of the third degree. The jury found appellant not guilty of the remaining counts. As memorialized in a June 23, 2000, entry, appellant was sentenced to an aggregate sentence of six months in jail and ordered to pay a fine in the amount of $1,000.00.
It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY DENYING DEFENSE COUNSEL THE RIGHT TO CROSS EXAMINATION A KEY WITNESS REGARDING INCONSISTENCIES BETWEEN HER TRIAL TESTIMONY AND HER PRIOR STATEMENT, THEREBY DENYING THE DEFENDANT/APPELLANT A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY DENYING THE DEFENSE MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S EVIDENCE AND AGAIN AT THE CLOSE OF ALL THE EVIDENCE, AS TO COUNT THREE (3) OF THE INDICTMENT, IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION WHERE THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION FOR SEXUAL IMPOSITION.
 ASSIGNMENT OF ERROR III
 THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION AND THEREFORE, THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 I
Appellant, in his first assignment of error, argues that the trial court erred by denying appellant the right to cross-examine Katie Schafer, the victim in this matter, regarding inconsistencies between her trial testimony and her prior taped statement to Detective Anderson, which had been transcribed. Appellant specifically contends that while Katie testified at trial that appellant contacted her after the incident and told her to keep the incident secret, no such statement was contained in her taped oral statement to Detective Anderson. Appellant also states in his brief that "other issues were raised in the testimony which were inconsistent, non-existent or omitted from the statement to the police, such as the subject of oral sex and failure to disclose the panties."
Crim.R. 16(B)(1)(g) states, in relevant part, as follows:
 Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.
In the case sub judice, the trial court, at appellant's request, conducted an in-camera review of the transcript of Katie Schafer's recorded statement to Detective Anderson pursuant to Crim.R. 16. Following the trial court's review, defense counsel, after independently reviewing the transcript of the recorded statement for inconsistencies, indicated to the trial court that "[t]he material inconsistencies is that I did not find anywhere where she talked about the phone calls about him being mature and keeping it a secret. I have never seen that in there. She did testify to that." Trial Transcript at 158. However, the trial court found no inconsistencies, holding that "the mere fact they are not contained within the document doesn't produce an inconsistency." Id. For such reason, the trial court refused to allow appellant to cross-examine Katie Schafer with the transcript of her prior taped statement to Detective Anderson.
Certain details related to the police may naturally not be brought up on direct examination and some details omitted from a witness statement may naturally crop up for the first time at trial, and it is not appropriate to consider the omission of such details to be "inconsistencies." However, more material omissions may under the circumstances be fairly construed as inconsistencies. State v. Hartford
(1984), 21 Ohio App.3d 29, 31. The trial court is given broad discretion in determining whether an inconsistency exists. See State v. Clay (1972)29 Ohio App.2d 206, 212. In order to find an abuse of discretion, we must find that the trial court's decision was arbitrary, unconscionable or unreasonable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
We find that the trial court did not abuse its discretion in refusing to permit appellant to cross-examine Katie Schafer with the transcript of her prior taped statement to Detective Anderson since the trial court's decision was not arbitrary, unconscionable or unreasonable. We concur with appellee that Katie Schafer's failure to tell Detective Anderson that appellant had told her to keep the incident secret was not a material omission since it was not material to the underlying charges against appellant. Such omission was not, therefore, an inconsistency. Furthermore, as appellee notes, appellant had the opportunity to cross-examine Katie Schafer at trial regarding other alleged omissions from her statement to Detective Anderson. For example Katie Schafer admitted during cross-examination that she did not tell Detective Anderson about the oral sex because "[i]t was just everything thrown at me." Trial Transcript at 188. She also conceded that she did not tell the Detective about the ripped underwear. Thus, we cannot say that appellant was prejudiced by the trial court's refusal to allow appellant to impeach Katie Schafer with the transcript of her taped statement to Detective Anderson.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in his second assignment of error, contends that the trial court erred in denying his motion for judgment of acquittal of the charge of sexual imposition. Such motion was made at the close of the State's case-in chief and at the close of appellant's case-in chief.
Crim.R. 29(A) states as follows:
 "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
The standard of review under Crim.R. 29(A) is sufficiency of the evidence. Our standard of review on the issue of sufficiency is established in State v. Jenks (1991), 61 Ohio St.3d 259, to which the court held as follows: "The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt * * *" Id. at paragraph 2 of the syllabus.
Appellant in the case sub judice was convicted of sexual imposition in violation of R.C. 2907.06. Such section states as follows:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
 (2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.
 (3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.
 (4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.
 (B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.
Sexual contact is defined is R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." The "corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory." State v. Economo (Ohio 1996) 76 Ohio St.3d 56, syllabus.
We find, upon our review of the record, that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant had sexual contact with Katie Schafer, while Schafer was between the ages of thirteen and sixteen, with the intent of arousing or gratifying himself. While appellant contends that there is insufficient corroborating evidence of the alleged sexual contact between appellant and Katie, we previously have held that the "mere fact that the victim reported the incident to the police is sufficient corroborating evidence to satisfy the requirement,. . . ." SeeState v. Abdalla (Sept. 25, 1996), Licking App. No. 95-CA-00150, unreported. As is stated above, Katie reported the incident to Detective Anderson. Moreover, at the trial in this matter, Heather, Katie's friend, testified that she recalled seeing appellant and Katie together on the couch before falling asleep and that, when Katie was awakened by appellant the next morning, Katie "was wearing her bra and her underwear was on backwards." Trial Transcript at 223. Thus, there was sufficient corroborating evidence of the sexual contact between appellant and Katie.
Appellant further contends that his conviction for sexual imposition was against the sufficiency of the evidence since there was no evidence that appellant's contact with Katie was made for either his own or Katie's sexual arousal or gratification In State v. Cobb (1991),81 Ohio App.3d 179, the court stated as follows:
 "Thus, the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved."
Cobb, 81 Ohio App.3d at 185. At the in this matter, Katie testified, in part, that testimony that, after tickling her leg, appellant began massaging her groin area. She further testified that appellant performed oral sex on her. Clearly, from Katie's testimony, the jury could infer that appellant was motivated by desires of sexual arousal or gratification.
Based on the foregoing, we find that sufficient evidence was adduced at trial to support appellant's conviction for sexual imposition. The trial court, therefore, did not err in overruling appellant's motion for acquittal.
Accordingly, appellant's second assignment of error is overruled.
 III
Appellant, in his third assignment of error, maintains that his conviction for contributing to the unruliness or delinquency of a child and sexual imposition were against the sufficiency and manifest weight of the evidence. We disagree.
As is stated above, with respect to sufficiency of the evidence, "[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." See Jenks, supra. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, 20 Ohio App.3d at 175.
Appellant in the case sub judice was convicted of contributing to the unruliness or delinquency of a child and of sexual imposition. In our discussion of appellant's second assignment of error, we found that appellant's conviction for sexual imposition was not against the sufficiency of the evidence. We further find that appellant's conviction for sexual imposition was not against the manifest weight of the evidence since, based upon both Katie's and Heather's testimony, we cannot say that the trier of fact lost its way so as to create a manifest miscarriage of justice.
The next issue for determination, therefore, is whether appellant's conviction for contributing to the unruliness or delinquency of a child in violation of R.C. 2919.24 is against the sufficiency or manifest weight of the evidence. R.C. 2919.24 states, in relevant part, as follows:
(A) No person shall do either of the following:
 (1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code;
 (2) Act in a way tending to cause a child or a ward of the juvenile court to become an unruly child, as defined in section 2151.022 of the Revised Code, or a delinquent child, as defined in section 2151.02 of the Revised Code.
An "unruly child" is defined in R.C. 2151.022(G) as including "[a]ny child who engages in an occupation prohibited by law or is in a situation dangerous to life or limb or injurious to the child's own health or morals or the health or morals of others."
At the trial in this matter, Katie testified that she and her friends would often go to appellant's house where beer and GHB were available, around midnight and would frequently stay until 2:00 or 3:00 a.m. without parental permission. According to both Katie and her friend Heather's testimony, on August 17, 1999, Katie, Heather, Jason and appellant, after driving around the Jewish cemetery, went to appellant's house where Katie and Heather took GHB and ended up spending the night. When Katie indicated to appellant that she was not feeling the effects of the GHB, appellant put GHB in her orange juice. Neither Katie nor Heather had permission from their parents to be at appellant's house at such time.
Based on the above testimony, we cannot say that appellant's conviction for contributing to the unruliness or delinquency of a child was against the sufficiency of the evidence. Construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant, by providing GHB to Katie at his house and frequently letting her stay there until the early hours of the morning without parental knowledge or consent, aided, adduced, caused, encouraged or contributed to Katie engaging in conduct detrimental to her health and morals. Moreover, from our review of the evidence, we cannot say that the jury, as trier of fact, lost its way so as to create a manifest miscarriage of justice.
Accordingly, for the foregoing reasons, appellant's third assignment of error is overruled.
The judgment of the Stark County Court of Common Pleas is, therefore, affirmed.
 ___________________________ Edwards, P.J
By Gwin, J. and Farmer, J. concur.
[1] Katie was born on January 29, 1985.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.